IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTERNATIVES RESEARCH AND DEVELOPMENT FOUNDATION | : : : | CIVIL ACTION |
| v. | : : | |
| TOM VILSACK, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL. | : : : : | NO. 15-6408 |

**MEMORANDUM**

**Padova, J.**                                                                                              **March 30, 2017**

   Alternatives Research and Development Foundation ("ARDF") commenced this breach of contract action pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2), against Defendants Tom Vilsack, the Secretary of the United States Department of Agriculture (the "USDA"), and Chester Gipson, the Deputy Administrator of Animal Care with the USDA's Animal and Plant Health Inspection Service.  ARDF seeks a remedy for USDA's alleged breach of the terms of a litigation settlement agreement pursuant to which the USDA agreed to enact regulations concerning the use of birds in research, product testing and education.  Specifically, ARDF asks for less than $10,000 in monetary damages, as well as an order remanding the case to the USDA "for relief that is incident of and collateral to the money judgment," i.e., an order requiring USDA to enact bird-specific regulations.

   Defendants have filed a Motion to Dismiss ARDF's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).  We held oral argument on the Motion on March 3, 2017, and thereafter permitted the parties to submit supplemental briefing.  For the following reasons, we grant Defendants' Motion insofar as it seeks dismissal pursuant to Rule 12(b)(1), and we dismiss ARDF's Complaint for lack of subject matter jurisdiction.

**I.   BACKGROUND**

The Complaint alleges that ARDF is a non-profit organization, whose "mission is to advance animal welfare by advocating for and supporting the development, validation, and adoption of non-animal methods in biomedical research, product testing and education." (Compl. ¶ 8.) For more than seventeen years, ARDF has been involved in efforts to protect birds. (Id. ¶ 11.) Among its efforts have been those to gain protection for birds pursuant to the Animal Welfare Act (the "AWA"), 7 U.S.C. § 2131 et seq., a federal statute that was enacted to "'to insure that animals intended for use in research facilities or for exhibition purposes . . . are provided humane care and treatment.'" (Id. ¶¶ 11, 15 (quoting 7 U.S.C. § 2131).) To accomplish the AWA's purpose, the USDA is directed to "'promulgate standards to govern the humane handling, care, treatment and transportation of animals'" covered by the AWA. Id. ¶ 17 (quoting 7 U.S.C. § 2143(a).)

Through the mid-1990s, the AWA protected dogs, cats, monkeys, guinea pigs, hamsters, and rabbits, but did not protect birds, rats, and mice. (See Compl. ¶¶ 23-26.) It also, however, defined covered "animals" to include "'such other warmblooded animal, as the Secretary may determine is being used, or is intended to use, for . . . exhibition purposes.'" (Id. ¶ 23 (quoting 7 U.S.C. § 2132(g) (1970).) On April 29, 1998, ARDF and others filed a Petition for Rulemaking, requesting that the USDA amend its definition of "animal" in the federal regulations to include birds, rats and mice (all warm-blooded animals), and they subsequently filed a federal action in the District of Columbia, challenging the exclusion of such animals from AWA protection and seeking declaratory and injunctive relief. (Id. ¶¶ 26-27); see Alternatives Research & Dev. Found. v. Glickman, 101 F. Supp. 2d 7 (D.D.C. 1999). On September 25, 2000, the parties to the lawsuit entered into a "Stipulation of Dismissal" pursuant to Fed. R. Civ. P. 41(a)(1), in which Defendants agreed "to initiate and complete rulemaking on the regulation of birds, rats[,] and mice

2

within a reasonable time in accordance with the Administrative Procedure Act." (Compl. ¶ 28 (alteration in original); Stip. of Dismissal, attached as Ex. A to Compl., ¶ 2.)

In 2002, Congress explicitly amended the AWA's statutory definition of covered animals to "'exclude[] . . . birds, rats . . . , and mice . . . , bred for use in research,'" thereby permitting coverage for birds, rats and mice not bred for use in research. (Compl. ¶¶ 33-34 (quoting 7 U.S.C. § 2132(g)).) In 2004, the USDA amended its regulations "'by narrowing the scope of the exclusion for birds to only those birds bred for use in research.'" (Id. ¶ 35 (quoting 69 Fed. Reg. 31,513).) Thereafter, the USDA stated that it intended to promulgate bird-specific standards, recognizing that the general regulatory standards that it used for other animals would not be "appropriate or adequate to provide for the humane handling, care, treatment, and transportation of birds." (Id. ¶¶ 38, 40 (quoting 69 Fed. Reg. 31,539).) To date, however, the USDA has not proposed, much less enacted, bird-specific regulations. (Id. ¶ 42.)

ARDF's Complaint asserts a single cause of action for breach of contract under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). It essentially alleges that Defendants breached the Stipulation of Dismissal by failing to promulgate bird-specific regulations. The Complaint seeks less than $10,000 in money damages as well as a "remand to . . . the USDA for relief that is incident of and collateral to the money judgment" and "with such direction as it may deem proper and just." (Id. at 18 ¶¶ 2-3 (citing 28 U.S.C. § 1491(a)(2)).) Alternatively, it asserts that it "seeks a court order directing immediate compliance with the [Stipulation of Dismissal]." (Id. at 2 ¶ 5, and 18 ¶ 2.)

## II.  LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citing

3

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Here, Defendants bring a facial attack. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . ." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." Id. (citing Mortensen, 549 F.2d at 889–92). As such, "a facial attack 'contests the sufficiency of the pleadings.'" Id. (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).

"In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" Id. (quoting In re Schering Plough Corp., 678 F.3d at 243). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Id. (citing In re Schering Plough Corp., 678 F.3d at 243).

### III.  DISCUSSION

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). They argue, inter alia, that we lack jurisdiction under the Little Tucker Act, reasoning that the Act does not waive the government's sovereign immunity with respect to ARDF's claim for breach of the Stipulation of Dismissal, because the Stipulation is a contract that the government entered into in its sovereign capacity and that does not unmistakably provide for monetary damages upon breach.

Under principles of sovereign immunity, the federal government is immune from suit except insofar as it consents to be sued. Komlo v. United States, 657 F. App'x 85, 87 (3d Cir. 2016) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)). Consequently, "federal

courts do not have jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit." United States v. Bein, 214 F.3d 408, 412 (3d Cir. 2000) (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)).

As a general matter, the Little Tucker Act waives the government's sovereign immunity, and confers jurisdiction on the federal district courts, for contract claims against the United States that seek damages of no more than $10,000. 28 U.S.C. § 1346(a)(2) ("The district courts shall have original jurisdiction. . . of . . . (2) [a]ny . . . civil action or claim . . . not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . ."). The Act does not, however, waive sovereign immunity "with regard to all contracts that [the government] makes with private entities." Awad v. United States, 61 Fed. Cl. 281, 284 (2004) (citing Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981)).[1] Governmental contracts with private entities come in two varieties: proprietary contracts and sovereign contracts. Id. (citing Doe v. United States, 37 Fed. Cl. 74, 77 (1996)). The United States enters into a sovereign contract when it contracts in its governmental capacity, agreeing to exercise government functions that have no "private analogue." Id. Thus, a sovereign contract is one that a private person could not make because the power to exercise the contractual duties rest solely with the government. See id. at 285. Proprietary contracts, on the other hand, are "contracts in which 'the sovereign steps off the throne and engages in . . . transactions such as private parties, individuals or corporations also engage in among themselves.'" Id. at 284 (quoting Kania, 650 F.2d at 268) (additional citation omitted). Among such contracts are contracts for the "'purchase and sale of goods, lands, and

---

[1] Kania, a Court of Claims case, was decided in 1981, before the United States Court of Appeals for the Federal Circuit was established on October 1, 1982. See South Corp. v. United States, 690 F.2d 1368, 1369 (Fed. Cir. 1982). Accordingly, it is binding precedent in the Federal Circuit. Id. ("[T]he holdings of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, announced by those courts before the close of business September 30, 1982, shall be binding as precedent in this court.").

services.'" Id. at 284 (quoting Kania, 650 F.2d at 268).

While the Tucker Act waives the government's sovereign immunity with respect to proprietary contracts, it does not waive the government's sovereign immunity with respect to sovereign contracts unless "(1) the persons who made the contract on behalf of the government . . . had authority to bind the government to pay monetary damages; and (2) the contract's language provides for the payment of monetary damages in case of a breach." Id. at 285 (citing Kania, 650 F.2d at 268); see also Robbins v. United States Bureau of Land Mgmt., 438 F.3d 1074, 1084 (10th Cir. 2006) (applying this reasoning to claims brought under the Little Tucker Act) (quoting Awad, 62 Fed. Cl. at 285); Transam Trucking, Inc. v. Fed. Motor Carrier Safety Admin., Civ. A. No. 14-2015, 2016 WL 3902719, *2 (D. Kan. July 19, 2016) (quoting Robbins, 438 F.3d at 1084). Moreover, with respect to the latter requirement, the contract must "'clearly and unmistakably subject[] the government to monetary liability for any breach.'"[2] Awad, 61 Fed. Cl. at 286 (alteration in original) (quoting Kania, 650 F.2d at 268, and citing Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001)); see also Woodson v. United States, 89 Fed. Cl. 640, 651 (2009) (stating that governmental liability for monetary damages "'should not be implied and [can] exist only if there [is] an unmistakable promise to subject the United States to monetary liability.'" (emphasis in original) (quoting Sanders, 252 F.3d at 1336)).

Here, there can be no question that the Stipulation of Dismissal into which Defendants entered was made in the government's sovereign capacity, as it obligated the government "to initiate and complete a rulemaking on the regulations of birds," a power that rests solely with the government and cannot be performed by a private person. (Stip. of Dismissal ¶ 2.) Indeed, the

---

[2] In contrast, with proprietary contracts, "'the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract.'" Harris v. United States, 118 Fed. Cl. 180, 187 (2014) (quoting Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011)).

6

Animal Welfare Act, which is designed to ensure that "animals intended for use in research facilities . . . are provided humane care and treatment," vests sole authority in the Secretary of Agriculture to promulgate regulations for the treatment of animals consistent with the stated purpose of the Act. 7 U.S.C. §§ 2131(1), 2143(a)(1).

ARDF takes issue with the underlying premise that there are limitations on our jurisdiction over Tucker Act claims arising out of sovereign contracts, contending that the above-mentioned limitations apply only to claims arising out of contracts in the criminal context. In support of this assertion, ARDF relies primarily on United States v. Zajanckauskas, 346 F. Supp. 2d 251 (D. Mass 2003), a case in which the court considered whether the Little Tucker Act waived the government's sovereign immunity with respect to a claim for monetary damages arising out of breach of an immunity agreement in the immigration context. Id. at 254. In concluding that it did, the court observed that both Kania and Sanders, the seminal cases on the Tucker Act's applicability to sovereign contracts in the Federal Circuit, involved contracts in the criminal context, i.e., a cooperation agreement in Sanders and a bail agreement in Kania. See id. at 255. The Zajanckauskas court further observed that, although Kania spoke broadly about a sovereign/proprietary distinction and Sanders "relied heavily" on Kania, Sanders "conspicuously" did not "mention the sovereign/proprietor rationale" and instead "focuse[d] exclusively on the difference between civil and criminal contracts in which the United States is a party." Id. at 255-56. Thus, the court stated that "the Federal Circuit in Sanders has significantly recast the sovereign/proprietor distinction in Kania as a distinction between civil and criminal contracts to which the United States is a party." Id. at 257. The Zajanckauskas court therefore concluded that, post-Sanders, "the criminal/civil distinction [is] the appropriate way to distinguish between those contracts cognizable under the Tucker Act as a matter of course (civil) and those cognizable

7

only if they contain a clear and unmistakable statement subjecting the United States to monetary liability for any breach (criminal)." Id.

However, in Trudeau v. United States, 68 Fed. Cl. 121 (2005), the Court of Federal Claims considered the court's reasoning in Zanjanckauskas and expressly declined to follow it, reiterating that "the relevant distinction is between government contracts entered into in a proprietary or sovereign capacity rather than whether a particular contract arose in a criminal or civil context." Id. at 127 (citations omitted). As the Trudeau court explained, under Federal Circuit law, the Sanders court could not overrule Kania without reconsidering that decision en banc and, in any event, there was no need for Sanders to overrule Kania because the two cases are consistent with one another. Id. at 128 (citing Bankers Trust New York Corp. v. United States, 225 F.3d 1368, 1373 (Fed. Cir. 2000)). Furthermore, as Trudeau observed, even after Sandersdecisions of the Court of Federal Claim continued to rely on Kania and analyze whether the government had entered into contracts in its proprietary or sovereign capacity. Id. at 127 (citing, e.g. Awad, 61 Fed. Cl. at 284; Bailey v. United States, 54 Fed. Cl. 459, 482-83 (2002)). We similarly observe that, since the decision in Trudeau, courts have continued to conclude that contracts in the civil context are subject to the sovereign/proprietary distinction and, as a result, court have dismissed Tucker Act claims for lack of subject matter jurisdiction when they seek monetary damages for breaches of civil contracts that the Government made in its sovereign capacity. See, e.g., Transam Trucking, 2016 WL 3902719, at *1, *2 (finding no jurisdiction over Little Tucker Act claim alleging that federal agency breached a settlement agreement in which agency agreed to issue an amended compliance review report addressing plaintiff's prior safety violations and safety rating); Meschkow v. United States, 109 Fed. Cl. 637, 643 (2013) (finding no jurisdiction over Tucker Act claim alleging that United States Trustee breached a stipulated agreement in a bankruptcy proceeding to maintain certain items under seal); see also Miller v. United States, 67

Fed. Cl. 195, 200 (2005) (finding no jurisdiction over Tucker Act claim alleging that government breached express contract in international treaty). Relying on the analysis in Trudeau and the other decisions cited above, we conclude that our jurisdiction over claims regarding federal contracts in the civil context depends, at least in part, on whether the contract was proprietary or sovereign.

We also conclude that the government entered into the Stipulation of Dismissal in its sovereign capacity. Thus, our subject matter jurisdiction turns on whether "(1) the persons who made the contract on behalf of the government . . . had authority to bind the government to pay monetary damages; and (2) the contract's language provides for the payment of monetary damages in case of a breach." Awad, 61 Fed. Cl. at 285 (citing Kania, 650 F.2d at 268). If either of these two requirements is not met, the government has not waived its sovereign immunity and we have no jurisdiction over the parties' dispute. Id. Without reaching the question of the authority of the government agents who entered into the Stipulation, we readily conclude that the Stipulation of Dismissal does not "clearly and unmistakably" provide for the payment of monetary damages in the case of a breach of Defendants' obligation to promulgate regulations. Awad, 61 Fed. Cl. at 286 (quotations omitted). Indeed, the only mention of money in the Stipulation is Defendants' agreement to pay $18,000 in attorney fees following dismissal of the lawsuit, an obligation which was apparently satisfied, and there is no reference to any consequence upon breach of the agreement to complete a rulemaking. (Stip. of Dismissal ¶ 4). We therefore conclude that the contract manifests no intention to subject the government to monetary liability for any failure to exercise its sovereign powers in initiating and completing a rulemaking on the regulation of birds.

Consequently, we conclude that the Little Tucker Act does not waive the government's sovereign immunity with respect to the Stipulation of Dismissal, and we therefore have no jurisdiction to adjudicate ARDF's breach of contract claim.[3]

## IV. CONCLUSION

For the foregoing reasons, we grant Defendants' Motion to Dismiss insofar as it seeks dismissal for lack of jurisdiction pursuant to Rule 12(b)(1), and we thus do not reach Defendants' alternative argument that the Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). An appropriate Order follows.

BY THE COURT:

John R. Padova, J.

---

[3] We further observe that, even if we had jurisdiction over ARDF's Little Tucker Act claim for monetary damages, we would not have the power to order the equitable relief that ARDF also seeks, i.e., an order requiring Defendants to enact bird-specific regulations. First, we simply have no power under the Little Tucker Act to order specific performance of a government contract. Robbins, 438 F.3d at 1082 (stating that "the Little Tucker Act[] 'impliedly forbid[s]' federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance"); see also Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 432-33 (3d Cir. 1979) (observing that the Tucker Act does not give plaintiffs the right to obtain specific performance on a government contract) (citations omitted). Second, to the extent that the Little Tucker Act authorizes the granting of any equitable relief, the relief must be "incidental to and collateral to a claim for money damages" and, here, the equitable relief requested is neither incidental nor collateral to the requested money judgment. Bobula v. United States Dep't of Justice, 970 F.2d 854, 858-59 (Fed. Cir. 1992) (citing 28 U.S.C. § 1491(a)(2)) (additional citations omitted); see also Wagstaff v. United States, 105 Fed. Cl. 99, 110 (2012) (stating that the Tucker Act only authorizes equitable relief that "'is tied and subordinate to a money judgment.'" (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998)).